**Judge Hellerstein**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

08    CV 02353

--------------------------------------------------------------

MAP MARINE LIMITED,

               Plaintiff,

  - against -

AUTOPISTAS DEL MAR, C.A. (AUTMARCA),

            Defendant.

--------------------------------------------------------------X

08 Civ.

ECF CASE

RECEIVED

MAR 06 2008

U.S.D.C. S.D. N.Y.
CASHIERS

## VERIFIED COMPLAINT

Plaintiff, MAP MARINE LIMITED ("Plaintiff"), by and through its attorneys, Lennon,

Murphy & Lennon, LLC, as and for its Verified Complaint against the Defendant, AUTOPISTAS

DEL MAR, C.A. (AUTMARCA) (hereinafter referred to as "Defendant") alleges, upon information

and belief, as follows:

1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure and 28 United States Code § 1333. Jurisdiction over this matter is

also present pursuant to the Federal Arbitration Act, 9 United States Code § 1 *et seq.*, and this

Court's federal question jurisdiction, 28 United States Code § 1331.

2.     At all times material to this action, Plaintiff was, and still is, a foreign corporation, or

other business entity organized and existing under foreign law.

3.     Upon information and belief, Defendant was, and still is, a foreign corporation, or

other business entity organized and existing under foreign law.

4.     By a charter party dated January 25, 2008 (the "charter party") Plaintiff chartered to

Defendant the M/V GRAND ANEMI (the "Vessel") for one time charter trip of about 45 days for

the carriage of bulk iron ore cargo, via the Orinoco River to China. *See Charter Party attached as Exhibit 1.*

5.      The Charter Party provides for hire to be paid by Defendant to Plaintiff at the rate of $71,000 per day, including overtime plus, $1,530,000 ballast bonus and bunker credit. *See Exhibit 1.*

6.      The Vessel was delivered to the Defendant on or around February 13, 2008 and since that time has been waiting for cargo.

7.      Pursuant to the charter party, the Plaintiff was due the sum of $5,950,000 by way of a letter of credit opened by Defendant's bank in favor of Plaintiff's bank, to be payable in full latest within 5 days from the Vessel's delivery (*i.e.* February 13, 2008).

8.      A letter of credit was opened. Plaintiff has presented the documents for payment under the letter of credit but payment has not been made.

9.      Despite due demand by Plaintiff, Defendant has breached the Charter Party by failing to pay the outstanding hire, ballast bonus, and bunker credit in the amount of $5,950,000, all of which is due and owing to Plaintiff.

10.     Pursuant to the Charter Party, all disputes are to be submitted to arbitration in London with English Law to apply.

11.     Plaintiff is preparing to initiate arbitration after the commencement of this action and personal jurisdiction is obtained over Defendant.

12.     This action is brought in order to obtain jurisdiction over Defendant and also to obtain security for Plaintiff's claims and in aid of arbitration proceedings.

13.    Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English Law. Section 63 of the English Arbitration Act of 1996 specifically allows for recovery of these items as part of an award in favor of the prevailing party.

14.    As best as can now be estimated, Plaintiff expects to recover the following amounts at arbitration as the prevailing party:

| | | |
|---|---|---|
| A. | Principal claim: | |
| | Hire, Ballast Bonus and Bunker Credit: | $5,950,000.00 |
| B. | Compound interest on principal claim at 7% for two years: | $ 885,847.50 |
| C. | Attorneys' fees and costs of arbitration: | $ 95,000.00 |
| **Total:** | | **$6,930,847.50** |

15.    The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of one or more garnishees which are believed to be due and owing to the Defendant.

16.    The Plaintiff seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia*, any assets of the Defendant held by the aforesaid garnishee for the purpose of obtaining personal jurisdiction over the Defendant, and to secure the Plaintiff's claims as described above.

**WHEREFORE**, Plaintiff prays:

A.    That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

B.    That the Court retain jurisdiction to compel the Defendant to arbitrate in accordance with the United States Arbitration Act, 9 U.S.C. § 1 *et seq.*;

C.    That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds held by any garnishee within the District which are due and owing to the Defendant, in the amount of **$6,930,847.50** to date to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

D.    That this Court recognize and confirm any arbitration award(s) or judgment(s) rendered on the claims set forth herein as a Judgment of this Court;

E.    That in the alternative, this Court enter judgment against the Defendant on the claims set forth herein;

F.    That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

G.    That this Court award Plaintiff its attorney's fees and costs of this action; and

4

H.    . That the Plaintiff have such other, further and/or different relief as the Court

may deem just and proper.

Dated: March 6, 2008
      New York, NY

                             The Plaintiff,
                             MAP MARINE LIMITED

                             By: _Anne C. LeVasseur_

                                Patrick F. Lennon
                                Anne C. LeVasseur
                                LENNON, MURPHY & LENNON, LLC
                                The GrayBar Building
                                420 Lexington Ave., Suite 300
                                New York, NY 10170
                                (212) 490-6050 – phone
                                (212) 490-6070 – fax
                                pfl@lenmur.com
                                acl@lenmur.com

## ATTORNEY'S VERIFICATION

State of Connecticut )
                     )    ss.:    Southport
County of Fairfield  ).

    1.    My name is Anne C. LeVasseur

    2.    I am over 18 years of age, of sound mind, capable of making this

Verification, and fully competent to testify to all matters stated herein.

    3.    I am an attorney in the firm of Lennon, Murphy & Lennon, LLC, attorneys for the

Plaintiff.

    4.    I have read the foregoing Verified Complaint and know the contents

thereof and believe the same to be true and accurate to the best of my knowledge, information and

belief.

    5.    The reason why this Verification is being made by the deponent and not

by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now

within this District.

    6.    The source of my knowledge and the grounds for my belief are the

statements made, and the documents and information received from, the Plaintiff and agents and/or

representatives of the Plaintiff.

    7.    I am authorized to make this Verification on behalf of the Plaintiff.

Dated: March 6, 2008
       Southport, CT

                               Anne C. LeVasseur
                               Anne C. LeVasseur

Exhibit 1

# Time Charter
## GOVERNMENT FORM
*Approved by the New York Produce Exchange*

November 6th, 1913-Amended October 20th 1921: August 6th 1931: October 3rd, 1946

1. This Charter Party, made and concluded in ............. Greece 25ᵗʰ day of January 2008.....

2. Between .......MAP MARINE LIMITED, of Cayman Island ...................................... Disponent

3. Owners of the good ...Flag...MALTA... Steamship/Motor ship ...MV GRAND ANEMI.. of See Clause 82 – Vessel's description

4. of ............... tons gross register, and ......... tons net register, having engines of .... indicated horse power .....

5. and with hull, machinery and equipment in a thoroughly efficient state, and classed .................

6. at .................of about.........cubic feet bule capacity and about ............tons of 2240 lbs

7. deadweight capacity (cargo and bunkers, including fresh water and stores not exceeding one and half per cent of ship's dead weight capacity,

8. allowing a minimum of fifty tons) on a draft of ___ feet ___ inches on _____ Summer freeboard, inclusive of permanent bunkers,

9. which are of the capacity of about ............tons of fuel, and capable of steaming, fully laden, under good weather

10. conditions about ...........knots ...... on a consumption of about_____best Welsh coal best grade fuel oil best grade Diesel oil

11. now Trading ...........................................................................................

12. ......and AUTOPISTAS DEL MAR, C.A(AUTMAR CA)xLa Salle Avenue,Bucaral Building,9ᵗʰ floor ,office 91,Los Caobos , Cararas – 1040 Venezuela ..........

13. Witnesseth, That the said Owners agree to let, and the said Charterers agree to hire the said vessel, from the time of delivery, for

14. about......one time charter trip about 45 days with bulk harmless lawful IRON ORE cargo always per IMO otherwise as per CP trading cargoes, WW via safe berths, safe anchorages, safe port in /out geographical rotation always afloat always accessible always within institute warranty limits, via ORINOCO RIVER to CHINA , port in Charterers option routing via CAPE GOOD HOPE.

15. ........................... within below mentioned trading limits..

16. Charterers to have liberty to sublet the vessel for all or any part of the time covered by this Charter, but Charterers remaining responsible for

17. the fulfillment of this Charter Party. Acceptance of delivery of the vessel does not constitute any waiver of Owners' obligations under this Charter Party.

18. Vessel to be placed at the disposal of the Charterers, at arrival first sea pilot station Orinoco River any time day/night Sundays holidays included

19. ............................................................

20. in such dock or at such wharf or place (where she may safely lie, always afloat, at all time of tide except as otherwise provided in clause No. 6) as

21. the Charterers may direct If such dock, wharf or place be not available time to count as provided for in clause No.5 Vessel on her delivery to be

22. ready to receive any permissible *cargo* with clean-swept holds and tight, staunch, strong and in every way fitted for the service, having water ballast, winches and

23. donkey boiler with sufficient steam power, or if not equipped with donkey boiler, then other power sufficient to run all the winches at one and the same

24. time (and with full complement of officers, seamen, and engineers and firemen for a vessel of her tonnage), to be employed, in carrying lawful merchan-

25. dise, Including petroleum or its products in proper containers excluding, As per Clause 72...............

26. (vessel is not to be employed in the carriage of Live Stock, but Charterers are to have the privilege of shipping a small number on deck at their risk

27. all necessary fixings and other requirements to be for account of Charterers), in such lawful trades, between safe port and/or ports and/or safe places in British North

28. America, and/or United States of America and/or West Indies, and/or Central America, and/or Caribbean Sea, and/or Gulf of Mexico and/ or

29. Mexico and/or South America ................................... and / or Europe

30. and/or Africa, and/or Asia, and/or Australia, and/or Tasmania, and/or New Zealand, but excluding Magdalena River, River St Lawrence between

31. October 31ˢᵗ and May 15th, Hudson Bay and all unsafe parts, also excluding, when out of season. White Sea, Black Sea and the Baltic,

32. ...............................................................

33. ..........................................................................................

34. .............................................................................................

35. as the Charterers or their Agents shall direct, on the following conditions

36.    1. That the Owners shall provide and pay for all provisions, wages and consular shipping and discharging fees of the Crew; also all charges necessary due to vessel's nationality or flag and nationality of crew, also all garbages unless compulsorily removed and shall pay for the

37. insurance of the vessel, also for all the cabin, deck engine-room and other necessary stores, including boiler water and maintain her class and keep

38. the vessel in a thoroughly efficient state in hull, cargo, machinery and equipment for and during the service.

39.    2. That *whilst on hire* the Charterers shall provide and pay for all the fuel except as otherwise agreed, Port Charges, Tugs, Compulsory & Customary Pilotages, Agencies except agency fees for Owners matters, Commissions,

40. Consular Charges (except those pertaining to the crew and vessel), and all other usual expenses except those before stated, but when the vessel puts into

41. a port for causes for which vessel is responsible, then all such charges incurred shall be paid by the Owners. Fumigations ordered because of

42. illness of the crew to be for Owners account. Fumigations ordered because of cargoes carried or ports visited while vessel is employed under this

43. charter to be for Charterers account. All other fumigations to be for Charterers account after vessel has been on charter for a continuous period

44. of six months or more.

45. Charterers are to provide necessary dunnage and shifting boards, also any extra fittings requisite for a special trade or unusual cargo, but

46. Owners to allow them the use of any dunnage and shifting boards already aboard vessel. Charterers to have the privilege of using shifting boards

47. for dunnage, they making good any damage thereto.

48. See clause 76   3. ~~That the Charterers, at the port of delivery, and the Owners, at the port of~~ redelivery, shall ~~take over and pay for all fuel remaining on~~

49. ~~board the vessel at the current prices in the respective ports, the vessel to be delivered with~~ not less than ...... ~~tons and not more than~~

50. ...... ...... ~~tons and to be re-delivered with~~ not less than ...... ~~tons and not more than~~ ...... ~~tons.~~

51.    4. That the Charterers shall pay for the use and hire of the said Vessel at the rate of *USD 71.000(Seventy- one Thousand Dollars ) daily including overtime plus US$ 1,530,000(One million Five Hundred Thirty Thousand Dollars) Gross Ballast Bonus.* Paid every 15 days in advanced into Owners nominated bank account.

52. .......................... ~~United States Currency per ton on vessel's total dead weight carrying capacity,~~ including bunkers and

53. ~~stores on~~ ................ ~~summer freeboard, per Calendar Month,~~ commencing on and from the day of her delivery, as aforesaid and at

54. and after the same rate for any part of a month; hire to continue until the hour of the day of her redelivery in like good order and condition, ordinary

55. wear and tear excepted, to the Owners (unless lost) at .. on **dropping last outward sea pilot one safe port China port in Charterers option at any time day/night Sundays holidays included.**

56. ...................... ... unless otherwise mutually agreed. Charterers are to give Owners not less than approximate then 30,20 days approximate and then 10,7,5,3,2,1 days definite notice of port/time.

57. notice of vessel's expected date of re-delivery, and probable port

~~58.~~ 5. Payment of said hire to be made in New York in cash in United States Currency, to Owners bank account semi-monthly 15 days in advance, and for the last half-month or

~~59.~~ part of same the approximate amount of hire, ~~and should same not cover the actual time, hire is to be paid for the balance day by day as it becomes~~

60. ~~due if so required by Owners, unless bank guarantee or deposit is~~ made by the Charterers, see **Clause 63** otherwise failing the punctual and regular payment of the

61. hire, ~~or bank guarantee,~~ or on any breach of this Charter Party, the Owners shall be at liberty to withdraw the vessel from the service of the Char-

62. terers without prejudice to any claim they (the Owners) may otherwise have on the Charterers. ~~Time to count from 7 a.m. on the working day~~

63. ~~following that on which written notice of readiness has been given to Charterers or their Agents before 4 p.m. but if required by Charterers, they~~

64. ~~to have the privilege of using vessel at once, such time used to count as hire.~~

65. Cash for vessel's ordinary disbursements at any port may be advanced as required by the Captain, by the Charterers or their Agents, subject

66. to 2½ % commission and such advances shall be deducted from the hire. The Charterers however shall in no way be responsible for the application

67. of such advances.

68. 6. That the cargo or cargoes be laden and/or discharged in any *safe* dock or at any safe wharf or safe that Charterers or their Agents may

69. direct provided the vessel can safely lie always afloat at any time of tide, except at such places where it is customary for similar size vessels to safely

70. lie aground.

71. 7. That the whole reach of the Vessel's Hold, Decks and usual places of loading (not more than she can reasonably stow and carry), also

72. accommodations for Supercargo, if carried, shall be at the Charterers' disposal, reserving only proper and sufficient space for Ship's officers, crew

73. tackle, apparel, furniture, provisions, stores and fuel. ~~Charterers have the privilege of passengers as far as accommodation allow,~~ Charterers

74. ~~paying Owners _____ per-day-per-man passenger for accommodation and meals. However, it is agreed that in case any fines or extra expenses~~ are

75. ~~incurred in the consequence of the carriage of passengers Charterers are to bear such risk and expense.~~

76. 8. That the Captain shall prosecute his voyages with the utmost despatch, and shall render all customary assistance with ship's crew and

77. boats. The Captain (although appointed by the Owners) shall be under the orders and directions of the Charterers as regards employment and

78. agency and Charterers are to load, stow, and trim tally and discharge at their expense under the supervision of the Captain, who is to sign Bills of Lading for

79. cargo in conformity with Mate's or Tally Clerk's receipts. Without prejudice to Charterers' rights under this Charter Party always in strict accordance with specific condition of cargo and with general remark.

80. 9. That if the Charterers shall have reason to be dissatisfied with the conduct of the Captain, Officers, or Engineers, the Owners shall on

81. receiving particulars of the complaint, investigate the same, and if necessary make a change in the appointments

82. 10. That the Charterers shall have permission to appoint a Supercargo, who shall accompany the vessel and see that voyages are prosecuted

83. with the utmost despatch. He is to be furnished with free accommodation, and same fare as provided for Captain's table. Charterers paying at the

84. rate of *US$ 10.00* per day. Owners to victual Pilots and Custom Officers, and also, when authorized by Charterers or their agents, to victual Tally

85. Clerks, Stevedore's Foreman etc. Charterers paying US$ 10 at the current rate per meal, for all such victualling.

86. 11. That the Charterers shall furnish the Captain from time to time with all requisite instructions and sailing directions, in writing, and the

87. Captain shall keep a full and correct Log of the voyage or voyages, which are to be patent to the Charterers or their Agents, and furnish the Char-

88. terers, their Agents or Supercargo when required, with a true copy of daily logs, showing the course of the vessel and distance run, and the con-

89. sumption of fuel, and RPM of main engine and wind/sea condition in English.

90. 12. That the Captain shall use diligence in caring for the ventilation of the cargo.

91. 13. ~~That the Charterers shall have the option of continuing, this charter for a further period of~~.......

92. ..........................................................................................................................................................................

93. ~~on giving written notice thereof to the Owners or their Agents~~..................~~days previous to the expiration of the first named term, or any declared option~~

94. 14. That if required by Charterers, time not to commence before ...00:01hrs **07**[th] **February 2008**... ...........and should vessel

95. not have given written notice of readiness on or before,....18[th] **February 2008**..... but not later than 2400 hrs Charterers or

96. their Agents to have the option of cancelling this Charter at any time not later than the day of vessel's readiness.

97. 15. That in the event of the loss of time from deficiency *of men or* stores, fire, breakdown or damages to hull, machinery or equipment,

98. grounding, detention by average accidents to ship or cargo, dry docking for the purpose of examination or painting bottom, or by any other cause attributed to vessel/Owner

99. preventing the full working of the vessel, the payment of hire shall cease for the actual time thereby lost, and if upon the voyage the speed be reduced by

100. defect in or break down of any part of her hull, machinery or equipment, the time so lost, and the cost of any extra fuel consumed in consequence

101. thereof, and all extra expenses shall be deducted from the hire.

102.    16.   That should the vessel be lost money paid in advance and not earned (reckoning from the date of loss or being last heard of) shall be

103. returned to the Charterers at once. The act of God, enemies, fire, restraint of Princes, Rulers and People and all dangers and accidents of the Seas,

104. Rivers, Machinery, Boilers, and Steam navigation and errors of Navigation throughout this Charter party, always mutually excepted.

105. The vessel shall have the liberty to sail with or without pilots, to tow and to be towed to assist vessels in distress, and to deviate for the

106. purpose of saving life and property.

107.    17.   That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons at London according to English Law New York,

108. one to be appointed by each of the parties hereto and the third by the two so chosen; their decision or that of any two of them shall be final, and for

109. the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial men.

110.    18.   That the Owners shall have a lien upon all cargoes, and all sub—freights for any amounts due under this Charter, including General Aver-

111. age contributions and the Charterers to have a lien on the Ship for all monies paid in advance and not earned and any overpaid hire or excess

112. deposit to be returned at once. Charterers will not suffer nor permit to be continued, any lien or encumbrance incurred by them or their agents, which

113. might have priority over the title and interest of the owners in the vessel.

114.    19.   That all derelicts and salvage shall be for Owner's and Charterers' equal benefit after deducting Owners' and Charterers' expenses and

115. crew's proportion. General Average shall be adjusted, stated and settled in London according to Rules 1 to 15, inclusive, 17 to 22, inclusive, and Rule F of

116. York Antwerp Rules *1974 or any amendments thereto* 1924 at such port or place in the United States as may be selected by the carrier and as to matter not provided for by these

117. Rules, according to the laws and usages at the port of London New York. In such adjustment disbursements in foreign currencies shall be exchanged into

118. United States money at the rate prevailing on the dates made and allowances for damage to cargo claimed in foreign currency shall be converted at

119. the rate prevailing on the last day of discharge at the port or place of final discharge of such damaged cargo from the ship. Average Agreement or

120. bond and such additional security as may be required by the carrier, must be furnished before delivery of the goods. Such cash deposit as the carrier

121. or his agents may deem sufficient as additional security for the contribution of the goods and for any salvage and special charges thereon, shall if

122. required be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery Such deposit shall, at the option of the

123. carrier, be payable in United States money and be remitted to the adjuster. When so remitted the deposit shall be held in a special account at the

124. place of adjustment in the name of the adjuster pending settlement of the General Average and refunds or credit balance, in any, shall be paid in

125. United States Money.

126. In the event of accident, danger, damage or disaster before or after commencement of the voyage resulting from any cause whatsoever,

127. whether due to negligence or not for which or for the consequence of which the carrier is not responsible by statute, contract or otherwise the

128. goods, shipper and the consignee jointly and severally shall contribute with the carrier in general average to the payment of any sacrifices,

129. losses or expenses of a general average nature that may be made or incurred and shall pay salvage and special charge incurred in respect of the

130. goods. If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully and in the same manner as if such salving ship or

131. ships belonged to strangers. Hire not to contribute in general average

132. Provisions as to General Average in accordance with the above are to be included in all bills of lading issued hereunder.

133. 20. Fuel used by the vessel while off hire,

134. cost of replacing same, to be allowed by Owners.

135. 21. That as the vessel may be from time to time employed in tropical waters during the term of this Charter, Vessel is to be docked at a

136. convenient place, bottom cleaned and painted whenever Charterers and Captain think-necessary, at least once in every six months reckoning from

137. time of last painting and payment of the hire to be suspended until she is again in proper state for the service.

138. *No drydocking except in emergency*

139. ............................................................

140. 22. Owners shall maintain the gear of the ship as fitted, providing gear (for all derricks) capable of handling lifts up to three tons, also

141. providing ropes, falls, slings and blocks, if vessel is fitted with derricks capable of handling heavier lifts, Owners are to provide necessary gear for

142. same, otherwise equipment and gear for heavier lifts shall be for Charterers' account. Owners also to provide on the vessel electric lights for all hatches/holds lanterns and oil for

143. night work, and vessel to give use of electric light when so fitted, but any additional lights over those on board to be at Charterers' expense. The

144. Charterers to have the use of any gear on board the vessel.

145. 23. Vessel to work night and day, if required by Charterers, and all cranes winches to be at Charterers disposal during loading and discharging

146. steamer to provide crane drivers as per Clause 32 one winchman per hatch to work winches day and night, as required, Charterers agreeing to pay officers engineers, winchmen,

147. deck-hands and donkeymen for overtime work done in accordance with the working hours and rates stated in the ship's articles. If the rules of the

148. port or labour unions prevent crew from driving cranes winches, shore Winchmen shore Cranemen to be paid by Charterers. In the event of disabled winch or winches, or

149. insufficient power to operate winches, subject to Owners prior approval Owners to pay for shore engine, or engines. In lieu thereof, if required, and pay any loss of time occasioned

150. thereby,

151. 24. It is also mutually agreed that this Charter is subject to all the terms and provisions of and all the exemptions from liability contained

152. in the Act of Congress of the United States approved on the 13th day of February, 1893, and entitled "An Act relating to Navigation of Vessels,

153. etc" in respect of all cargo shipped under this charter to of from the United States of America. It is further subject to General Clause Paramount the following clauses, both

154. of which is are to be including in all bills of lading issued hereunder.

155.                                   U.S.A. Paramount Clause

156. This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April

157. 16, 1936 which shall be deemed to be incorporated herein and nothing herein contained shall be deemed a surrender by the carrier of

158. any of its rights or immunities or an increase of any of its responsibilities, or liabilities under said Act. If any term of this bill of lading

159. be repugnant to said Act to any extent, such term shall be void to that extent, but no further.

160.                                   Both to Blame Collision Clause

161. If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the

162. Master, mariner, pilot or the servants of the Carrier in the navigation or in the management of the ship, the owners of the goods carried

163. hereunder will indemnify the Carrier against all loss or liability to the other or non carrying ship or her owners in so far as such loss

164. or liability represent loss or damage to or any claim whatsoever of the owner of said goods paid or payable by the other or non

165. carrying ship or her owners to the owners of said goods and set off, recouped or recovered by the other or non carrying ship or her

166. owners as part of their claim against the carrying ship or carrier.

167.    25. The vessel shall not be required to enter any ice-bound port, or any port where lights or light-ships have been or are about to be with-

168. drawn by reason of ice, or where there is risk that in the ordinary course of things the vessel will not be able on account of ice to safely enter the

169. port or to get out after having completed loading or discharging.

170.    26. Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers. The owners to remain responsible for the

171. navigation of the vessel, insurance, crew, and all other matters, same as when trading for their own account.

172.    27. A commission of 2 ½ 1.25 per cent is payable by the Vessel and Owners to be **shared equally between Unitramp Srl Shipbrokers Napies** and **G.O.Chartering Greece and 1.25 per cent to Inter Brokers.**

173. ....................................................

174. on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter,

175.    28. An address commission of 2 ½ 3.75 per cent payable *Charterers* on the hire earned and paid under this charter.

Additional *Clauses No. 29 to No.100 inclusive as attached hereto are incorporated within the terms if this Charter Party.*

Owners                                                Charterers

----------------------------------                    ----------------------------------

- 1 -

ADDITIONAL CLAUSES TO M/V "GRAND ANEMI"
CHARTER PARTY DATED 25TH JANUARY 2008

CLAUSE 29. Breakdown / Loss of Time – Off Hire

In the event of any loss of time and/or proven damages and/or accidents howsoever and whatsoever incurred due to, but not limited to :

- Deficiency of Officers / Crew / men or stores.
- Breakdown or damage to hull, machinery or equipment.
- Detentions by average accidents to ship/cargo including collisions/stranding and / or any accidents between ship/berth/shore side facilities.
- Repairs / dry-docking or other necessary measures to maintain the efficiency of the vessel.
- Failure to possess such valid certificates or other documentation for the vessel/ Officers crew.
- Deleted.
- Insufficient power to operate winches / cranes.

Then vessel to be off-hire for any/all time actually lost and Owners to pay proven consequences & expenses incurred, including but not limited to stevedore standby time and proven and direct expenses, if any. Charterers option to add any off-hire time to the maximum period allowed per this Charter Party.

CLAUSE 30. Fumigations

All fumigations required to be for Owners account except for those ordered by Port Authorities because of cargoes carried or ports visited united Charterers' orders. All fumigations required prior to delivery and after redelivery for Owners' account.
It is understood that any fumigations on account of cargo to be for Shippers / Charterers account.

CLAUSE 31. Safe Ballast

Owners guarantee vessel always to be safe in ballast and it is agreed that if any solid ballast is required all expenses for same including time used in loading and discharging to be for Owners' account.

CLAUSE 32. Ballasting / De-ballasting

Vessel to ballast /de-ballast clean water ballast tanks if required by Charterers or their agents at any time during loading and / or discharging free of expenses to Charterers but in Charterers time. All ballasting/de-ballasting shall be at the discretion of Master having due regard to stability and seaworthiness of the vessel. Vessel capable of ballast/de-ballast in 24 hours.

CLAUSE 33. Fresh Water

Owners to supply fresh water to stevedores on board the vessel as available on board.

CLAUSE 34. Confidential Fixtures

The fixture of this Charter Party to be kept strictly confidential and private by Owners, Charterers, as well as by Brokers involved.

CLAUSE 35. Bunking in U.S.A (It's Territories or Possessions)

Owners warrant that the vessel is eligible for bunkers in accordance with the U.S. Department of Commerce Directive No. 705 and any amendments thereto, U.S. Federal Maritime Commissions Certificate of Financial Responsibility as required under the U.S. Water Quality Improvement Act of 1970 is in vessel's possessions and valid throughout the duration of the Charter Party.

- 2 -

## ADDITIONAL CLAUSES TO M/V "GRAND ANEMI"
## CHARTER PARTY DATED 25TH JANUARY 2008

### CLAUSE 36. Black List

Owners guarantee that the vessel is not blacklisted by the Arabian Courtiers, the U.S.A., or any countries that this vessel may trade, by Government organizations or by others such as labour unions, and that this or any other vessel owned, managed, time-chartered or controlled by them has not called at Cuba, North Vietnam or North Korea since September $1^{\varsigma}$, 1962.

### CLAUSE 37. Extra Insurance

Additional premium to be as per Owners original vouchers but not to exceed minimum of London Underwriters Scale. Only additional premium over and above that existing, if any, at time of fully fixing to be for Charterers' account. Charterers to be responsible only for such additional premium on war risks, any other to remain for Owners account and responsibility.

All additional premiums as per minimum International Market. Charterers to have the benefit of all/any reduction, no claim bonuses, discounts etc or such that owners may receive and or be eligible for, and Charterers to only pay such net amounts.

### CLAUSE 38. Stowage

The Master shall supervise stowage of the cargo as well as instruct one of his officer to supervise all loading, handling and discharge of the cargo, and he is to furnish Charterers with stowage plans and other documents issued by Charterers agents and or Shipper/Receivers accordingly and other documents customarily used.

### CLAUSE 39. Grain

Owners warrant that the vessel is suitable carrying a full cargo of grain in all holds without requiring any grain fittings and/or bagging or security etc.

Vessel has on board grain loading booklet in accordance with SOLAS 1974 Regulations and IMCO Resolution A-264(VIII) as adapted in 1974. Furthermore, vessel to have on board approved table of heeling movements for 'fitted holds-untrimmed ends' in accordance to IMO Regulations as per vessel's Grain Loading Booklet.

### CLAUSE 40. Hold Cleanliness / Cleaning Clause

Vessel/holds on arrival first load port to be clean and washed and ready to receive Charterers cargo of IRON ORE. Should vessel holds fail such survey by independent or shippers surveyor then time from such failure until vessel is clean shall be off-hire and Owners to arrange all cleaning thereto. Holds on redelivery to be in about same condition as was on delivery , fair wear and tear accepted- or alternatively in Charterers option, Charterers may re-deliver Vessel without any cleaning works paying lumpsum US$ 7,000 in lieu of any cleaning.

### CLAUSE 41 Delivery/Redelivery

A joint on and off hire survey to be held respectively at first and last discharge port. On-hire survey in Owners' time. Off hire survey in Charterers time, costs of same to be equally shared between both parties.

### CLAUSE 42 Notice of Delivery

Owners/Master to give notice on fixing and then 3/2/1 day(s) notice of vessel's delivery to Charterers
e-mail: jmbb@autmarca.com ; autmarca@autmarca.com

- 3 -

ADDITIONAL CLAUSES TO M/V "GRAND ANEMI"
CHARTER PARTY DATED 25TH JANUARY 2008

#### CLAUSE 43 Log Reports

Master to provide Charterers with voyage reports (deck-engine log) together with letter of instructions, harbour report, off-hire reports, stevedores damage report to be issued on normal paper. These reports to be completed in full and delivered to Charterers representatives or their agents in English language latest on sailing port.

#### CLAUSE 44 Bunkering – Prior Delivery

Charterers option to bunker prior to vessel delivery provided such does not interfere with Owners operations, and Owners option also to bunker for their own account prior redelivery, provided same does not interfere with Charterers loading or discharging operations .

#### CLAUSE 45 Protective Clause

BIMCO ISM, New Jason Clause, New Both-to-Blame Clause and Conwartime 1993, ISPS CLAUSE, as applicable, as attached, are deemed to be incorporated in this Charter Party

#### CLASUE 46 Errors

To offset errors, Owners or Charterers to give each other at least 48 hours sat shex substantiated written notice before exercising their rights under this Charter Party.

#### CLAUSE 47 Delivery/Redelivery Time

Delivery and redelivery times to based on G.M.T.

#### CLAUSE 48 Lightening

Charterers have the privilege to lighten the vessel where necessary/required, and to provide sufficient fenders to master's satisfaction.

#### CLAUSE 49 Grabs

Charterers to have the liberty to use grabs for discharge in all cargo holds. Vessel's holds/hatches to be clear and free from all obstructions and suitable in every respect for grabs discharge. All/any pipes/wires/cables, to be covered and protected and Owners to be responsible for any/all damage if incurred due vessel's non-compliance with this clause.

#### CLAUSE 50 Hatches

Opening and closing of hatches whenever required to be performed by vessel's crew, provided local authorities permit it . In addition crew to render any normally required assistance.

#### CLAUSE 51 Hatch covers

Vessel's hatch covers are and remain during the currency of this Charter Party in proper condition, totally watertight and comply with the all relevant authorities (any authority relevant to her hatch covers eg: class) or other equivalent authority, otherwise any time lost and/or expenses incurred directly in the event of waterside workers or other at any time refusing to handle the vessel due to inadequacy of hatch covers, to be for Owners' account. Any damage to cargo resulting from defective or leaking hatch covers to be for Owners' account.

- 4 -

ADDITIONAL CLAUSES TO M/V "GRAND ANEMI"
CHARTER PARTY DATED 25ᵀᴴ JANUARY 2008

### CLAUSE 52 Dunnage /shifting Board/Cargo Pattern

Shifting board and other dunnage material on board to be stowed out of the way of cargo spaces to Charterers satisfaction prior to their accepting delivery of the vessel . If nevertheless some of the above mentioned material should be left in vessel's cargo spaces, Owners/Master to remove same on first request of Charterers of their agents. Otherwise Owner to be responsible for delays and extra expenses incurred. The Charterers to have full use of dunnage material on board, natural ventilators, mats, etc. Dunnage material delivery on board by Charterers to be redelivery to them on demand, otherwise become Owners' property.

### CLAUSE 53 Insurance

Notwithstanding anything in this Charter Party to the contrary it is expressly agreed that the Owners remain responsible for all personal injury and cargo claims to the extent of a full ship Owners' P and I cover, and the Owners guarantee to maintain such a P and I cover for the duration of this Charter Party. Vessel's Owners P and I Club is : Charterers to have the benefit of any return insurance premium receivable by Owners from their Underwriters , as and when received from their Underwritten by reason of vessel being laid up for periods qualifying for such returns, provided vessel is on hire . Any additional insurance levied on the vessel by reason of the vessels (age) flag, ownership and class to be borne by Charterers.
Over age premium on cargo is Charterers account.

Any insurance premium for basic war risk insurance and war bonus including blocking and trapping for Captain, Officers and crew to be for Owners' account, also any insurance premium for covering, blocking and trapping risk or detention and diversion expenses or any similar, to be for Owner's account, but any additional premiums to basic war risk insurance and war bonus as a result of vessel's trading under this Charter Party to be for Charterers account. Any additional premiums not to exceed minimum rates for the London market and or International market. If Owners have not covered basic war risk insurance time Charterers only to pay the differential of the amount as if Owners had done so.

### CLAUSE 54 Boycotts

In the event of loss of time, boycott of the vessel or any labour trouble by shore labour, seamen's union tugboats ,pilots, local authorities etc, whether official or unofficial, arising by reason of vessel's flag nationality or registry, her ownership, management or agents, the nationality of any member of her crew and/or the terms and conditions on which crew members are employed or by reason of the trading of this or any other vessel under the same ownership and/or control, payment of hire shall cease for the time thereby lost. Loss and expenses, if any ,resulting from such action to be for Owners' account.

### CLAUSE 55    ITF

Owners guarantee that the minimum terms and conditions on which crew are engaged are now and will be for the durations of this Charter covered by an I.T.F. Agreement or any bona fide Trade Union Agreement Accepted by the International Transport Workers Federation and local union/labour organization. If the vessel does not meet these requirements, the vessel is to go off-hire until such requirements are fully complied with, and any/all additional damage/costs incurred and proven consequences to be for Owners account including but not stevedores standing by or additionally engaged.

### CLAUSE 56    Fines

Owners to be responsible for customs fines and to put up security in case of necessity and if so demanded by local authorities. Any dispute as to ultimate liability arising in so far to be decided according to the terms and conditions of this Charter Party.

- 4 -

- 5 -

ADDITIONAL CLAUSES TO M/V "GRAND ANEMI"
CHARTER PARTY DATED 25ᵀᴴ JANUARY 2008

Any fines imposed on the vessel, Owners, Master, Officers or members of the crew originating from Master, Officers , or crew contravening local port and/or customs regulations, particularly as regards smuggling to be for Owners account and responsibility.

Any time lost due to above circumstances to be for Owners' account and to be deducted from hire.

## CLAUSE 57    Certificates

Owners guarantee that vessel has all international certificates covering entire vessel and that the entire vessel's is in good order in conformity with and comply with all regulations of countries which vessel may be employed .Owners to ensure that vessel is at all times in possession of valid and up-to-date Certificates of efficiency to comply with such regulations in every respect. If stevedores, longshoremen or other workmen are not permitted to work due to failure of Master and/or Owners and/or Owners agents to comply with aforementioned regulations or breakdown or because vessel is not in possession of such valid And up –to-date Vessel to have all relevant trading certificates, then Charterers may suspend hire for time lost.

If work stopped by aforementioned reasons Owners to pay additional the cost of labour affected by stoppage, either stood off or additionally engaged.

## CLAUSE 58  Bill(s) of Lading

Charterers of their agents are herewith authorized to issue and sign Charterers' Bill(s) of Lading on Master's behalf only in conformity with Mate's Receipts without prejudice and/or reference to this Charter Party. Charterers or their agents are further authorized to issue and sign delivery Orders on Master's behalf, against collection of full set of original Bills(s) of Lading. Master to advice Charterers directly and before any notation made on Mate's Receipts. No freight prepaid Bills of Lading to be issued for this charter party.

## CLAUSE 59  Put Back/Deviation

If during the currency of this Charter Party, vessel puts back whilst on voyage or deviates unless ordered by Charterers and/or their Agents, any loss of time caused by accident, breakdown (including but not limited to the vessel and/or other service and/or facility essential to the working of the vessel) or sickness of crew (including Master) or any person onboard of vessel (other than supercargo traveling under Charterers auspices) hire shall not to paid for the time actually so lost and the cost of extra fuel consumed and other extra expenses deriving therefrom shall be for Owner's account until vessel is in same or equivalent position where deviation took place and voyage resumed therefrom.

## CLAUSE 60  Sanitary

Officers and crew to comply with vaccination and sanitary regulations in all ports of call and corresponding certificates to be available on board, otherwise any detention and fines resulting from not having these certificates on board to be for Owner's account.

## CLAUSE 61  Ocean Routes

(a) Charterers option to supply Ocean Routes to Master during voyages specified by Charterers. The Master to comply with the reporting procedures of the routine service. The vessel shall be capable at all times during the currency of this Charter Party of steaming at about 13.0/13.0 knots in laden/ballast.

For the purpose of this Charter Party 'good weather conditions' are to be defined as weather conditions in wind speeds including but not exceeding Beaufort force 4 .Evidence of weather

- 5 -

conditions to be taken from ships deck logs and independent weather bureau reports . in the event of a consistent discrepancy between the deck logs and independent weather bureau reports then the independent weather bureau reports to be taken as ruling. In the event of a disputes over an apparent performance, data supplied by Ocean Routes shall be taken as binding on both parties.

(b) Vessel's further details as per attached ' Description Clause' are fully incorporated and form port of this Charter Party.

## CLAUSE 62  WWF

Owners guarantee vessel holds, hatches together with vessels manning agreements to be suitable to WWF and or marine orders 32 or any amendments thereto and or Australian standard throughout this CP – if the Vessel is unable to work or is prevented from working due to boycott by pilot, tug-men, linesmen, stevedores or other shore labour or services due to any fault and or deficiency of the vessel or owners or crew thereto, then the vessel is to be off-hire and any/all additional damage/costs and or proven consequences are to remain for Owners account and responsibility.

## CLAUSE 63 : Hire Payment/Letter of Credit

Hire US$ 71,000 PD including over time – 1,530,000 BB paid every 15 days into Owners nominated bank account, without deduction either express and or equitable, except allow address commission and Bunkers on redelivery (BOR) from last sufficient hire payment. Notwithstanding the above, it is agreed that the first payment is to be effected via a fully irrevocable Letter of Credit opened by Banco Monte dei Paschi di Siena NY ("Buyers' bank") in favour of Map Marine (the "Owners"), via Macquarie Bank ("Owners' bank") under the following conditions:

a)Total amount of the L/C to be Usd 5,950,000 payable in full
 latest within 5 days from vessel's delivery and in accordance
 with the L/C's wording to be agreed/confirmed by Owners.

b)Such amount represent a lumpsum including the hire estimated
 for performing the intended time charter trip plus the agreed
 ballast bonus and BOD value.

c)Hire/freight/ballast bonus and bunker payment is considered fully
 danrvaoclont

d)Should the Time charter trip 's duration exceed the hire included in the above
 mentioned lumpsum amount (for reasons such as delays during
 loading /discharging operations or delays for berthing or adverse sea
 conditions' during sea passage), Charterers to pay the expected
 outstanding difference into Owners' account prior to vessel's
 arrival at discharge port or in any case always prior to breaking
 bulk. On the contrary if there is any outstanding in Charterers'
 favour resulting after completion of the discharging operations
 and vessel's redelivery, Owners to settle/credit same to Charterers
 immediately upon final voyage accounts.

e)No "freight prepaid" bills of lading to be signed/released until
 100 pct of Usd 5,950,000 payment is received into Owners' bank
 account.

ADDITIONAL CLAUSES TO M/V "GRAND ANEMI"
CHARTER PARTY DATED 25TH JANUARY 2008

CLAUSE 64   Services

Vessel to work night and day, if required by Charterers, and all winches and/or cranes to be at Charterers disposal during loading and discharging . Hire also to include but not limited to the following services provided local regulations/weather conditions permit same:

(a)   Raising and lowering of derricks and rigging cranes and/or gangways in preparation for loading and discharging : VESSEL IS GEARLESS.

(b)   Opening and closing of hatches in connection with loading and discharging.

(c)   Closing and opening of hatches in the event of weather which may adversely affect condition of cargo carried onboard during loading and discharging : VESSEL IS GEARLESS.

(d)   Customary supervision of loading and discharging. Master to remain responsible for the stowage of the vessel insofar as this concern the trim and/or stability of the vessel.

(e)   Maintaining sufficient steam/electric power for all cranes/derricks in good order whilst loading and discharging including regular maintenance of cranes/derricks.

(f)   Shifting vessel during loading and discharging and shifting berth.

(g)   Docking and undocking.

(h)   Bunkering.

(i)   Officers and crew to shape-up vessel's hatches and derricks and cranes as much as possible prior to arrival at loading and/or discharging ports or places so as to immediately commence loading and/or discharging operations : VESSEL IS GEARLESS

(j)   Erecting and dismantling fixtures.

CLAUSE 65   E-MAIL

Master to cable : jnbb@autmarca.com ; autmarca@autmarca.com

1      Every Monday and Thursday at sea advising:

-   position at noon
-   average daily fuel and diesel consumption since last cable
-   ETA next port and distance to go

2      On sailing from port advising :

- 8 -
ADDITIONAL CLAUSES TO M/V "GRAND ANEMI"
CHARTER PARTY DATED 25TH JANUARY 2008

- date and time dropping outward pilot
- Bills of lading quantity if load port
- ETA next port
- Bunkers taken, if any
- Bunkers remaining on board

3  On arrival at port advising :

- date and time arrival pilot station.
- Estimated time at berth
- Bunkers remaining on board.

CLAUSE 66  Hire/General Average

Hire and bunkers not to contribute to General Average.

CLAUSE 67  Pad-Eyes

Charterers have the liberty to weld pad-eyes and/or other means of securing cargo to vessel's hull to hold cargo and/or equipment at their expenses. Same to be removed by Charterers in their time/expense prior to redelivery of the vessel.

CLAUSE 68  War

In the event of outbreak of war directly affecting vessel's trading (whether there be a declaration of war or not) between any of the two countries: The United Kingdom, U.S.A., China, Cyprus, Australia, Japan either the owners or the Charterers may cancel the Charter, whereupon the Charterers shall redeliver the vessel to the Owners after completion of her voyage (should she already be loaded), but always when vessel free of cargo. Alternatively, should Owners make such cancellation, then vessel to complete her current and/or her next scheduled voyage should she not already have commenced loading (provided such next trade is not to one of the aforementioned countries which is at war), and Owners to take back vessel also when she has completed and is free of cargo.

CLAUSE 69  ·  Cables/Entertainment Expenses

Charterers to pay a lumpsum of U.S 1500/- per month or pro-rata for all cable/entertainment/ victualling for all reasonable expenses.

CLAUSE 70  Liability for Cargo Claim

All liabilities of the cargo claims to be settled on the basis of International P & I Club Agreement of the New York Produce Exchange from dated February 20th, 1970 and reprinted may 1972 and any further amendments thereto.

CLAUSE 71  Cargo Exclusions

This trip to be bulk harmless lawful iron ore per IMO from Orinoco River to China, otherwise as per below.

- 8 -

#### CLAUSE 72    Trading Exclusions

. This trip to be bulk harmless lawful  iron ore per IMO from Orinoco River to China , otherwise as per
below

#### Clause 73    Suez/ Panama

Throughout the period of this charter vessel to be properly equipped to transit both the Suez and Panama
Canals, to have onboard current/valid Suez Canal/ Panama Canal  Certificates and vessel and her fitting to
comply with all applicable requirements/regulations of the Canal/South seaway and or other relevant
authorities.
Any delay and/or extra expense incurred in transit of Canal (s)/South Seaway through vessel's lack of
proper certificates and/or fittings and or equipment to be for Owner's account.

#### CLAUSE 74    Claims

Charterers shall be discharged and released from all liability in respect of any claim or claims which
Owners may have under this Charter Party and such claims shall be totally extinguished unless such claim
or claims have been notified in detail to Charterers in writing accompanied by all available supporting
documents (whether relating to liability or quantum or both) within 12 (twelve) months from completion of
discharge of the appropriate cargo under this Charter Party.

#### CLAUSE 75    Responsibility

If cargo is the property of a third party the Owners have the same responsibility as they would have if the
cargo is the property of the Charterers.

#### CLAUSE 76    Bunker Clause

Charterers to take over and pay for Bunkers on Delivery (BOD) with first hire payment (see Clause 63) at
USD 485/790 per metric ton FUEL OIL/DIESEL OIL. Expected Bunkers on delivery(BOD) about 1200-
1400 metric tons and 100-150 metric tons FUEL OIL/DISEL OIL. Bunkers on redelivery (BOR) to be
about same quantities as Bunkers on delivery and furthermore the agreed price of Usd 485 per metric tons
FUEL OIL and Usd 790 per metric ton DIESEL OIL  are to apply both at delivery and redelivery.

#### CLAUSE 77 Agency Appointment

Owners to appoint their own agents, where necessary to attend to all Owners, matter's such as delivery,
redelivery general average, dry-docking, hospitalization, repatriation or crew, repair, supply of vessel's
stores and provisions etc., No agency fee for Owners' minor husbandry matters.

Charterers agree to have their appointed agents attend to routine ship's husbandry with Owners paying
Charterers agents actual expenses and appropriate percentage of the agency fee according to the Charterers'
tariff rate.

Where Owners do not settle directly with Charterers agents, Charterers to change 2.5 % handling fee for all
payments for account Owners.

#### CLAUSE 78 Charter Hire Deduction

Charterers shall have the liberty to deduct  from hire payment any amount disbursed for Owners' account
provided Owners have authorized agent in writing to arrange same supported by vouchers.

Charterers have the further liberty to deduct from the last regular hire payment the estimated amount of disbursements of Owners' account account outstanding for which voucher have not yet reached. Charterers ,maximum US $1,000 per port

Charterers to submit and Owners to settle promptly for such disbursement accounts not later than 2 months after delivery.

### CLAUSE 79  Owner Tax

Any tax imposed on account of the Owners, Owners domicile, vessel flag and/or crew to be for Owners account including Owners income tax or other such tax from hire/earning received. Any other taxes on the Charterers business, including Charterers freight, shall be for Charterers account.

### CLAUSE 80  Arrest/seizure

Should the vessel be arrest and/or seized and/or delayed before or during the currency of this Charter party at the suit of any person having  or purporting to have a claim against, or any interest in the vessel or by any other default and/or accident of the Owners, vessel and/or Master/crew, hire under this Charter Party shall not be payable in respect of any period whilst the vessel remains under arrest and/or delayed or remains unemployed as the result of such arrest and the Owners shall reimburse to the Charterers any expenditure which they may incur under this Charter Party in respect of any period during which by virtue of the operation of this Clause no hire is payable unless such arrest is caused by actions of Charterers. Owners to be responsible for any/all deviation costs and time as well.
All above provided there is actual time lost for Charterers

### CLAUSE 81  Stevedores / Tallying

Stevedore and tallyment although arranged and paid for by the Charterers' / Shippers' / Receivers' in loading and discharging which shall be at the orders and directions of the Master.
The Charterers shall not be responsible for any negligence, default or errors in judgement nor for loss of or damage the vessel through the acts of pilots. Tugboats or improper or negligent stowage of cargo.
Unless Master has protested against such negligent or improper stowage at which time the stevedores to rectify to vessel/Master/satisfaction

### CLAUSE 82  Vessel's Description

MV GRAND ANEMI
76,650 MDWT on 13.807 msw
Built 2/1988 Malta Flag Class BV
LOA 244.99 m / Beam 32.21 m
Moulded Depth 18.75 m, TPC abt 70
9HH SDBC ITF or equiv.
Grain 87,352 cbm / Bale 84,700 cbm, 9HH
Abt 13 knots on abt 33 mt B/abt 35 mt L IFO (180 cst) + abt 2.5 mt MDO (DMB),
at sea in good weather conditions and upto and including
beaufort force 4/DSS 3, and with no adverse currents nor swells.
In port 2.5 mts MDO (DMB) per day
Vsl uses MDO whilst manouevring in/out of port/berths/canals/rivers and restricted
waterways etcvsl during
ballasting/de-ballasting is using about 5mt mdo
Grades per ISO 8217 standards, IFO 180cst RME 25
and DMB
All dets abt/wog

- 14 -
ADDITIONAL CLAUSES TO M/V "GRAND ANEMI"
CHARTER PARTY DATED 25TH JANUARY 2008

Clause 97: Lime wash or Hold Block in Charterers option

Deleted

Clause 98    Protective Clause

Deleted.

Clause 99

Deleted.

Clause 100.    Bunker Quality Clause

Charterers will use the best endeavors to obtain bunkers from suppliers complying with Marpol Annex VI requirements. However it is agreed that where the vessel trades to countries that have not ratified the MARPOL ANNEX VI or suppliers are not readily available that meet the standards of MARPOL ANNEX VI Charterers will not be responsible for any bunkers so purchased even if the vessel trades subsequently to a country that has ratified MARPOL ANNEX VI.

US CUSTOMS ADVANCE NOTIFICATION / AMS CLAUSE FOR TIME CHARTER PARTIES

A.  IF THE VESSEL LOADS OR CARRIES CARGO DESTINED FAR THE US OR PASSING THROUGH US PORTS IN TRANSIT, THE CHARTERERS SHALL COMPLY WITH THE CURRENT US CUSTOMS REGULATIONS (19CFR 4.7) OR ANY SUBSEQUENT AMENDMENTS THERETO AND SHALL UNDERSTAKE THE ROLE OF CARRIER FOR THE PURPOSES OF SUCH REGULATIONS AND SHALL, IN THEIR OWN NAME, TIME AND EXPENSE:

1.  HAVE IN PLACE A SCAC (STANDARD CARRIER ALPHA CODE)
2.  HAVE IN PLACE AN ICB (INTERNATIONAL CARRIER BOND)
3.  PROVIDE THE OWNERS WITH A TIMELY CONFIRMAITON OF 1 AND 2 ABOVE

AND

4.  SUBMIT A CARGO DECLARATION BY AMS (AUTOMATED MANIFEST SYSTEM) TO THE US CUSTOMS AND PROVIDE THE OWNERS AT THE SAME TIME WITH A COPY THEREOF.

B.  THE CHARTERERS ASSUME LIABILITY FOR AND SHALL INDEMNIFY, DEFEND AND HOLD HARMLESS THE OWNERS AGAINST ANY LOSS AND/OR DAMAGE WHATSOEVER (INCLUDING CONSEQUENTIAL LOSS AND/OR DAMAGE) AND/OR ANY EXPENSES, FINES, PENALTIES AND ALL OTHER CLAIMS OF WHATSOEVER NATURE, INCLUDING BUT NOT LIMITED TO LEGAL COSTS, ARISING FROM THE CHARTERERS FAILURE TO COMPLY WITH ANY OF THE PROVISIONS OF SUB-CLAUSE (A). SHOULD SUCH FAILURE RESULT IN ANY DELAY THEN, NOTWITHSTANDING ANY PROVISION IN THIS CHARTER PARTY TO THE CONTRARY, THE VESSEL SHALL REMAIN ON HIRE.

C.  IF THE CHARTERERS ICB IS USED TO MEET ANY PENALTIES, DUTIES, TAXES OR OTHER CHARGES WHICH ARE SOLELY THE RESPONSIBILITY OF THE OWNERS, THE OWNERS SHALL PROMPTLY REIMBURSE THE CHARTERERS FOR THOSE AMOUNTS.

D.  THE ASSUMPTION OF THE ROLE OF CARRIER BY THE CHARTERERS PURSUANT TO THIS CLAUSE AND FOR THE PURPOSE OF THE US CUSTOMS REGULATIONS (19 CFR

ADDITIONAL CLAUSES TO M/V "GRAND ANEMI"
CHARTER PARTY DATED 25TH JANUARY 2008

4.7) SHALL BE WITHOUT PREJUDICE TO THE IDENTITY OF CARRIER UNDER ANY
BILL OF LADING, OTHER CONTRACT, LAW OR REGULATIONS.

## BOTH TO BLAME COLLISION CLAUSE

If the liability for any collision in which the vessel is involved while performing this Charter Party falls to
be determined in accordance with the laws of the United States of America, the following clause shall
apply:-

## BOTH TO BLAME COLLISION CLAUSE

"If the ship comes into collision with another ship as a result of the negligence of the other ship and any
act, neglect or default of the Master, Mariner, Pilot or the servants of the Carrier in the navigation or in the
management of this vessel, the Owners of the cargo carried hereunder will indemnify the Carrier against all
lost or liability to the other or non-carrying ship or her Owners in so far as such loss or liability represents
loss of, or damage to , or any claim whatsoever of the Owners of said cargo, paid or payable by the other or
non-carrying ship or her Owners to the Owners of said cargo and set-off, recouped or recovered by the
other or non-carrying ship or her Owners as part of their claim against the carrying ship or Carrier.

The foregoing provisions shall also apply where the Owners, operators or those in charge of any ship or
objects other than, or in addition to, the colliding ships or objects are at fault in respect to a collision or
contact.

And the Charterers shall procure that all Bills of Lading issued under this Charter Party shall contain the
same clause.

## NEW JASON CLAUSE

In the event of accident, danger, damage or disaster before or after the commencement of the voyage,
resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence
of which, the carrier is not responsible, by statute, contract or otherwise, the goods, shippers consignees, or
Owners of the goods shall contribute with the carrier in general average to the payment of any sacrifices,
losses or expenses of a general average nature that may be made or incurred and shall pay salvage and
special charges incurred in respect of the goods.

If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully as if the said salving
ship or ships belonged to strangers. Such deposit as the carrier or his agents may deem sufficient to cover
the estimated contribution of the goods and any salvage and special charge thereon shall, if required, be
made by the goods, shippers, consignees or Owners of the goods to the carrier before delivery.

## BIMCO STANDARD WAR RISKS CLAUSE FOR TIME CHARTER 1993
## CODE NAME:"CONWARTIME 1993"

1. For the purpose of this Clause, the words:

   (a) "Owners" shall include the Ship owners, bareboat Charterers, Disponent Owners,
       Managers or other Operators who are charged with the management of the vessel and the
       Master; and
   (b) "War Risks" shall include any war (whether actual or threatened), act of war, civil war,
       hostilities, revolution, rebellion, civil commotion, warlike operations, the laying of mines
       (whether actual or reported), acts of piracy, acts of terrorists, acts of hostility or

malicious damage, blockades (whether imposed against all vessels or imposed selectively against vessels of certain flags or ownership, or against certain cargoes or crew or otherwise howsoever), by any person, body, terrorist or political group, or the Government of any state whatsoever, which, in the reasonable judgment of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the vessel, her cargo, crew or other persons on board the Vessel.

2.  The vessel, unless the written consent of the Owners be first obtained, shall not be ordered to or required to continue to or through, any port, place, area or zone (whether of land or sea); or any waterway or canal, where it appears that the Vessel, her cargo, crew or other persons on board the Vessel, in the reasonable judgment of the Master and/or the Owners, may be, or are likely to be, exposed to War Risks. Should the Vessel be within any such place as aforesaid, which only become dangerous, or is likely to be or to become dangerous, after her entry into it, she shall be at liberty to leave it.

3.  The vessel shall not be required to load contraband cargo, or to pass through any blockade, whether such blockade be imposed on all vessels, or is imposed selectively in any way whatsoever against vessels of certain cargoes or crew or otherwise howsoever, or to proceed to an area where she shall be subject, or is likely to be subject to a belligerent right of search and/or confiscation.

4.
(a)  The Owners may effect war risks insurance in respect of the Hull and Machinery of the Vessel and their other interests (including, but not limited to, loss of earnings and detention, the crew and their Protection and Indemnity Risks), and the premiums and/or calls therefore shall be for their account.

(b)  If the Underwriters of such insurance should require payment of premiums and/or calls because, pursuant to the Charterers' orders, the Vessel is within, or is due to enter and remain within, any area or areas which are specified by such Underwriters as being subject to additional premiums because of War Risks, then such premiums and/or calls shall be reimbursed by the Charterers to the Owners at the same time as the next payment of hire is due. However same to be against owners original supporting vouchers and maximum as per minimum London underwriters market. Only such additional premium / calls as that over and above that in existence, if any, at time of fixing to be for Charterers account.

5.  Deleted.

6.  The Vessel shall have the liberty:
(a)  To comply with all orders, directions, recommendations or advice as to departure, arrival, routes sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery, or in any other way whatsoever, which are given by the Government to whose laws the Owners are subject, or any Government, body or group whatsoever acting with the power to compel compliance with their orders or directions;

(b)  To comply with the order, the directions or recommendations of any war risks underwriters who have the authority to give the same under the terms of the war risks insurance;

(c)  To comply with the terms of any resolution of the Security Council of the United Nations, any directives of the European Community, the effective orders of any other Supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the Owners are subject and to obey the orders and directions of those who are charged with their enforcement;

(d)  To divert and discharge at any other port any cargo or part thereof which may render the Vessel liable to confiscation as contraband carrier;

- 17 -

ADDITIONAL CLAUSES TO M/V "GRAND ANEMI"
CHARTER PARTY DATED 25TH JANUARY 2008

(e) To divert and call at any other port to change the crew or any part thereof or other persons on board the vessel when there is reason to believe that may be subject to internment, imprisonment or other sanctions.

7. If in accordance with their rights under the foregoing provisions of this Clause, the Owners shall refuse to proceed to the loading or discharging ports, or any one or more of them, they shall immediately inform the Charterers. No cargo shall be discharged at any alternative port without giving the Charterers notice of the Owners' intention to do so and requesting them to nominate a safe port for such discharge. Failing such nomination by the Charterers within 48 hours of the receipt of such notice and request, the Owners may discharge the cargo at any safe port of their own choice.

8. If in compliance with any of the provision of sub-clauses (2G and (7) of this Clause anything is done or not done, such shall not be deemed a deviation, but shall be considered as due fulfillment of this Charter Party.

## ISPS CLAUSE

FROM THE DATE OF COMING INTO FORCE OF THE INTERNATIONAL SAFETY MANAGEMENT (ISM) CODE AND THE INTERNATIONAL CODE FOR THE SECURITY OF SHIPS AND PORT FACILITIES AND THE RELEVANT AMENDMENTS TO CHAPTER XI OF SOLAS (ISPS CODE) IN RELATION TO THE VESSEL AND THEREAFTER DURING THE CURRENCY OF THIS CHARTER PARTY. THE OWNERS SHALL PROCURE THAT BOTH THE VESSEL AND THE "THE COMPANY" (AS DEFINED BY THE ISM AND ISPS CODE) SHALL COMPLY WITH THE REQUIREMENTS OF THE ISM AND ISPS CODE. UPON REQUEST THE OWNERS SHALL PROVIDE A COPY OF THE RELEVANT DOCUMENTS OF COMPLIANCE (DOC) SAFETY MANAGEMENT CERTIFICATES (SMC) AND INTERNATIONAL SHIP SECURITY CERIFICATE TO THE CHARTERERS, EXCEPT AS OTHERWISE PROVIDED IN THIS CHARTER PARTY, LOSS, DAMAGE, EXPENSE OR DELAY INCLUDING CONSEQUENTIAL LOSS, CAUSED BY FAILURE ON THE PART OF THE OWNERS OR "THE COMPANY" TO COMPLY WITH THE REQUIREMENTS OF ISM AND ISPS CODE SHALL BE FOR THE OWNERS ACCOUNT. REQUIREMENTS INCLUDING ANY SECURITY/WATCHMEN TO COMPLY WITH ISPS TO BE FOR OWNERS RESPONSIBILITY.